FILED
AUG 09 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TODD C. KALISH, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) CIVIL ACTION NO. |
| MORGAN STANLEY & CO., LLC d/b/a MORGAN STANLEY, | ) ) ) ) |
| Defendant. | ) |

3:22 CV 1412

JUDGE ZOUHARY
MAG JUDGE CLAY

## COMPLAINT IN THE FORM OF MOTION TO VACATE ARBITRATION AWARD

AND NOW comes the Plaintiff, Todd C. Kalish, by and through his counsel, Jason A. Archinaco, Esquire and Michael A. O'Leary, Esquire of The Archinaco Firm, LLC and Randall C. Dixon, Esquire and Taylor R. Ward, Esquire of Dixon Hayes, Witherell & Ward, Ltd. and files the within Complaint in the Form of Motion to Vacate Arbitration Award, averring in support as follows:

### THE PARTIES

1. Todd C. Kalish ("Kalish") is an adult citizen of the United States and the state of Ohio with a principal address of 960 Elmwood Road, Rocky River, OH 44116. Kalish was registered with FINRA and possessed CRD# 286575.

2. Morgan Stanley & Co., LLC ("Morgan Stanley") is a Delaware Limited Liability Company with a principal place of business of 2000 Westchester Avenue, Purchase, NY 10577 and a registered agent at 28 Liberty St., New York, NY 10005. Morgan Stanley is a FINRA member firm, with a CRD# of 149777. Morgan Stanley & Co., LLC uses the DBA Morgan Stanley.

1

## JURISDICTION AND VENUE

3. The Federal Arbitration Act itself does not create federal jurisdiction; rather, an independent basis of jurisdiction is needed. Here, federal jurisdiction is proper pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeded and exceeds $75,000. Indeed, the amount in controversy in this matter was within a range of $9,958,324 to $21,105,278 million in compensatory damages, such harm being caused to Kalish's securities career.

4. Venue is proper in this District as the FINRA arbitration in question occurred remotely in Cleveland, Ohio, which is located in this district that is the subject of this Complaint in the Form of Motion to Vacate. All three arbitrators that served on the arbitration panel were situated in this district, and they are believed to remain in this district.

5. Jurisdiction is permitted pursuant to the Federal Arbitration Act, 9 U.S.C. § 10.

6. Proceedings to vacate or confirm an arbitration award must be served upon the adverse party or its attorney within three months after the award is filed or delivered. 9 U.S.C. § 12. Accordingly, this matter has been timely filed / served.

7. Proceedings to vacate or confirm an arbitration award are instituted by filing of a Motion to Vacate in the District Court where the arbitration was held, see 9 U.S.C. §§ 9, 12, just as a normal civil action is commenced by the filing of a complaint in the District Court, see, Fed. R. Civ. P. 3.

8. Thus, although technically called a "motion", the papers filed by a party seeking to confirm or vacate an arbitration award function as the initial pleadings in post-arbitration proceedings in the District Court. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988).

2

## GROUNDS FOR VACATUR PURSUANT TO 9 U.S.C. § 10(a)

9. As set forth in more detail in his Supporting Brief, Kalish asserts that vacatur is appropriate pursuant to the following grounds:

   a. 9 U.S.C. § 10(a)(3) - (arbitrators refusing to hear the evidence pertinent and material to the controversy); and

   b. 9 U.S.C. § 10(a)(4) – ("where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made").

## FACTS

10. On or about September 26, 2019, Todd C. Kalish instituted suit against Morgan Stanley related to Morgan Stanley's defamation and intentional interference with contract. See, Statement of Claim, attached hereto as Exhibit 1[1].

11. Because both Kalish and Morgan Stanley were FINRA members, they were compelled to arbitrate their dispute pursuant to FINRA bylaws / contract. FINRA Rule 13200 (Required Arbitration).

12. This matter was assigned to FINRA's Chicago office. Morgan Stanley's defense counsel was also located in Chicago.

13. Due to COVID19, numerous delays occurred in the proceeding. Ultimately, however, the matter was heard over the course of thirteen hearing dates between January 17, 2022 and March 10, 2022[2].

---

[1] Kalish hereby incorporates by reference Exhibits 15 through 29 as if more fully set forth at length herein. These exhibits are cited in his Brief in Support more specifically.

[2] The audio files of the entire arbitration proceeding have been lodged and attached hereto as Exhibit 29-1through 29-13. This is because although the Parties each ordered transcripts of the

3

14. On or about May 14, 2022, FINRA's Chicago-based case administrator delivered what it claimed was an "award" which was decided against Kalish and in favor of Morgan Stanley, rejecting all of Kalish's claims while granting Morgan Stanley's counterclaims in their entirety. However, the "award" that was delivered was not actually signed by any of the arbitrators. See, FINRA Unsigned Award, a true and correct copy of which is attached hereto as Exhibit 2. Instead, the names of the arbitrators appear <u>typed in italics on the award</u>. *Id.* Two names claim to have been typed on May 11, 2022, while one claimed to be typed on May 12, 2022. *Id.*

15. Two days later on May 16, 2022, Kalish's counsel wrote a letter to the FINRA case administrator and filed it on the portal / docket[3] demanding that the signatures be provided: "Claimant formally requests that each member of the Panel sign the award pursuant to FINRA Rule 13904(a) and (e)(13). *See* Kalish Correspondence Dated March 16, 2022, a true and correct copy attached hereto as Exhibit 3.[4] Further, the letter was filed on the FINRA portal / docket for the case and served on Morgan Stanley's counsel.

---

entire proceeding, only the audio is considered to be the official record pursuant to FINRA Rule 13606(a)(3).

[3] Morgan Stanley's counsel was served with copies of all such correspondence / filings through FINRA's portal / docket. FINRA requires filings to be made on its docket. Ultimately, after Kalish continued to object, FINRA unilaterally shut down the portal without notice, such that additional documents could no longer be filed on the portal.

[4] As the correspondence makes clear, not only was there an irregularity with the signatures, but FINRA repeatedly failed to provide the audio from the hearings, despite repeated demand. Ultimately, all audio from the hearings were obtained after several months delay. *See* Exhibit 3 (noting demand for audio as of March 11, 2022). The audio forms the official "transcript" of the proceedings and was particularly important since Morgan Stanley refused to acknowledge the court reporter transcripts (that they co-sponsored) as official transcripts.

4

16. Indeed, while Kalish's counsel correctly pointed out that the award was not properly signed as is required, Morgan Stanley's counsel remained silent in the face of the obvious deficiency.

17. When the case administrator ignored Kalish's counsel's request, on March 26, 2022, ten days later, Kalish's attorney wrote another letter to the case administrator. In addition to pointing out that the case administrator had still not provided all the audio from the proceedings, Kalish's attorney again requested a signed award that complied with FINRA's rules: "Further, despite Claimant's request, <u>FINRA has still not provided a signed award</u> as is required by FINRA Rules. Please do so immediately." *See* Kalish Correspondence Dated May 26, 2022, a true and correct copy attached hereto as Exhibit 4 (underline in the original).

18. Later that day, on May 26, the FINRA case administrator and/or FINRA itself attempted to cover up the issue related to the signatures by claiming: "We have received Claimant's request for a signed award in the above case. The request is denied as it does not comply with FINRA Rule 13905. Further an electronically signed copy of the award has already been served on the parties." *See* FINRA Correspondence Dated May 26, 2022, a true and correct copy attached hereto as Exhibit 5. Even though Morgan Stanley's counsel was receiving the correspondence through the FINRA portal, they oddly remained silent on the issue.

19. The following day, on May 27, Kalish's counsel objected to FINRA's response, filing another letter with FINRA. In relevant part with regard to missing signatures, Kalish's attorney wrote in relevant part:

> . . . you claim that our request for a signed award is "denied as it does not comply with FINRA Rule 13905. Furthermore, an electronically signed copy of the award has already been served on the parties."
>
> First, Rule 13905 does not apply. Indeed, Rule 13905 discusses the submission of documents to the arbitrators after a matter has been closed. We have not sought

5

to submit documents to the arbitrators as you falsely state, nor has this matter been closed given that FINRA refuses to follow its own rules in providing a signed award. Further, our initial request was within two days, well within the ten (10) day period even if the rule applied, which it does not.

Second, there is no "electronically signed" award. Instead, FINRA / you typed names in italics on the Award. This is not in compliance with Rules 13904(a) and (e)(13). Moreover, if the signatures were actually "e-signatures", then we request that FINRA provide the e-signature receipts validating the signatures. Indeed, there is no other way to authenticate such signatures when they are permitted. **However, given that FINRA / you did not really obtain e-signatures, we anticipate that you will not be able to provide us with any e-signature receipts. Accordingly, we conclude that FINRA / you inappropriately typed the arbitrators' names onto the Award and again demand a signed award in accordance with Rules 13904(a) and (e)(13).**

*See* Kalish Correspondence Dated May 27, 2022, a true and correct copy attached hereto as Exhibit 6 (underline in the original, emphasis added).

20. Thereafter, although FINRA did belatedly file additional audio on the portal / docket as requested,[5] FINRA failed to respond to the direct accusation levied against the case administrator. *See* FINRA Correspondence dated May 31 and June 16, a true and correct copy of which are attached hereto as Exhibits 7 and 8, respectively. Moreover, Morgan Stanley also remained silent despite the obvious irregularity.

21. Indeed, although it would be in Morgan Stanley's interests to have an actual, signed award that could be enforced in Court against Kalish, it refused to join Kalish's counsel in the request that one be provided.

---

[5] The final day of hearing containing the closing arguments went missing without explanation for several months. Only after Kalish's counsel had conversations with FINRA in New York advising that if the audio did not show up, he was going to involve law enforcement, did the missing audio appear without explanation. However, Kalish's counsel is grateful that the audio did re-appear, as Morgan Stanley refused to permit the contemporaneously transcribed transcripts from being the "official" transcription of the proceedings. Accordingly, lodged herewith are the entire audio files of the thirteen-day hearing which Morgan Stanley asserts is the official record. Accordingly, the citations contained herein as provided as guides to assist in locating audio testimony.

## Morgan Stanley Attempts to Use the Deficient, Clearly Unsigned Award to Strip Kalish of His FINRA License

22. On or about June 14, 2022, despite knowing that the award was unsigned and unenforceable in a court of competent jurisdiction, Morgan Stanley demanded that FINRA suspension proceedings be initiated against Kalish, writing to FINRA in relevant part: "The thirty days for payment of Awards mandated by FINRA Rule 13904(j) has now elapsed, and therefore Mr. Kalish is now subject to the Notice of Suspension or Cancellation provisions of FINRA Rule 9554. . . ."[6]

23. Three days later, on June 17, 2022, FINRA advised Kalish that he was subject to suspension of his license on July 8, 2022 pursuant to Rule 9554, and initiated suspension proceedings against Kalish. *See* FINRA Correspondence dated June 17, 2022, a true and correct copy of which is attached hereto as Exhibit 9.[8]

24. On July 7, 2022, Kalish timely requested a hearing pursuant to Rule 9554, causing the suspension to be halted pending the outcome of his hearing. Notably, an affirmative defense to such a proceeding is the filing of this vacatur petition. Such a suspension is stayed by operation of FINRA Rule 9559(c) once such a petition is filed.[9]

---

[6] Kalish remitted payment for the FINRA forum costs associated with his arbitration proceeding, but refused to pay the amounts ordered to Morgan Stanley as the award is unenforceable legally, lacking the requisite signatures.

[8] Although both Federal and Ohio state law is in accord that Kalish has three months (i.e. 90 days) to file an appeal seeking vacatur, FINRA's rules are drafted such that an award must be paid within thirty days, or suspension proceeds occur. However, FINRA rules provide a "carve out", i.e., that if vacatur is sought, then the proceedings are stayed pending the outcome of the vacatur petition. *Id.*

[9] An anomaly exists between FINRA's rules and both federal and Ohio law. Under both federal and Ohio law, Kalish was provided ninety (90) days to file for vacatur, this petition timely.

25. On July 11, despite Morgan Stanley knowing that Rule 9554 afforded Kalish the right to a hearing, its counsel again pressed the suspension issue. Indeed, Morgan Stanley's counsel wrote to FINRA: "Dear Ms. Loyer – I represent Morgan Stanley in the above captioned arbitration and received a copy of your attached letter to Todd Clark Kalish (CRD# 2865875) with respect to his failure to pay the amount of the counterclaim that was awarded against him in that arbitration. Please be advised that no payment has been received to date and your letter referenced that a suspension would be effective last Friday, July 8, 2022. Please advise. Thank you. Nick Berberian".

26. Later that day, FINRA advised Morgan Stanley that Kalish had exercised his right to a hearing. In response, Morgan Stanley's counsel claimed to be unaware of the hearing request and specifically requested to be provided with the date of the hearing, as well as offering to assist with the suspension proceedings by providing any other information from Morgan Stanley. FINRA advised Morgan Stanley:

> Mr. Berberian,
>
> The Office of Hearing Officers cannot discuss this proceeding with you as you and your client are not parties to this proceeding. Should you have additional questions or concerns, please contact the Department of Enforcement, which is a party to this proceeding. I am copying Respondent's attorneys and the Enforcement attorneys represented on this matter in the CC line above.

### FINRA Fails to Provide Any Evidence of Actual or Digital Signatures of Any of the Arbitrators

27. On July 11, 2022, the FINRA Hearing Officer assigned to the case entered a case management order acknowledging that Kalish had properly requested a hearing. *See* July 11, 2022, FINRA Case Management Order, a true and correct copy of which is attached hereto as Exhibit 10. Of specific note to the issues at hand, that Order required FINRA to produce by July

8

15, 2022 – "If Enforcement has not done so, it shall provide to Respondent . . . all documents that were considered in issuing the notice . . . ." *Id.*, p. 1.

28. On July 12, 2022, FINRA produced the documents it claimed to be relying upon, i.e., a copy of the unsigned award with the names typed on in italics, as well as other correspondence. <u>Devoid from FINRA's production, however, are / were any documents proving that any signatures exist, whether actual signatures and/or e-signatures / digital signatures.</u> *See* FINRA Production, a true and correct copy of which is attached hereto as Exhibit 11.

29. The next day, on July 13, 2022, the Hearing Officer held a status conference. During that conference, the Hearing Officer *sua sponte* raised the issue of whether she had authority to hear the dispute while recognizing that a court could hear a motion to vacate. See, Hearing Transcript, a true and correct copy of which is attached hereto as Exhibit 12, pp. 6:21-13:21.

30. In response, Kalish's counsel raised the issue that the "award" was unsigned, and that only typed italic names appeared on it, advising:

> The FINRA rule requires that an award be signed. Here there are no signatures. There's no electronic signatures either because we've requested from FINRA ... we requested any proof because there's no rule that permits electronic signatures. I have numerous letters that I'm going to introduce for the hearing where I requested any confirmation that there's an electronic signature either, and we didn't get any because there aren't any. There's no DocuSign or anything else. This is not signed. This is typed in italics on a form unsigned. It is highly unusual that this has happened.

Ex. 12, p. 14:8-25.

31. Further, Kalish's counsel argued:

> Now, as for your authority, I am not and we are not going to try to litigate the case itself. The only thing that you are to decide and write an opinion about, I think, is whether this award complies with FINRA's rules, such that it is enforceable. I mean, this gentleman is being asked to be suspended based on an award that doesn't comply with FINRA's rules. FINRA's rules require a majority of the

9

> arbitrators to sign. Ohio law also requires signatures, signed signatures, on arbitration awards. You had enough ... in terms of your authority, if you're not the one that has the authority on enforcing awards or not enforcing awards that don't comply with the rule, then our question would be well, who at FINRA does? Because we're following the procedure to obtain a ruling as to whether FINRA is interpreting this to be signatures, because they're not. That's the simple part.

*Id.* at pp. 15:1-16:3.

-----

> Also, this is ... we're not sure how this works, but since FINRA keeps refusing to confirm that the arbitrator signed the award or participated . . . we're going to request that the case administrator testify and that all three arbitrators be called to testify to affirm that this was their award. Because we're trying to get to the bottom of what's going on here, why the rules are not being followed and that's where we are. We are concerned. I think you do have authority because otherwise I don't know how the award ... I don't know how you'd suspend someone if you don't have the authority to interpret whether the award itself complies with the rules.

*Id.* at pp. 17:8-18:7.

> If this had been a DocuSign case, as I indicated to FINRA, give me the signed verifications from these gentlemen through DocuSign. DocuSign isn't even being accepted in every court yet, but I recognize that DocuSign is being accepted. I said, well, at least give me something like that. What's happened here is a very necessary component of authentication has been eliminated from the process. While this seems like an inconsequential thing, it's really not, because this gentleman has to face these proceedings and discipline where FINRA itself didn't follow the rules. That's the basis of it. I do think that this proceeding will be important to provide that type of clarification. Candidly, I was hopeful that now that we have very high-ranking people at FINRA involved, I'm glad to see, hopefully counsel will have communications and we'll get to the bottom of what's occurred here about the signature. That's where we are. I appreciate your time again.

*Id.* at 23:25-25:5.

32. In response to Kalish's counsel's argument, then lead counsel for FINRA argued as follows:

> MS. EPSTEIN: I will, ma'am. To respond briefly to Mr. Archinaco's concerns here, as an initial matter, we agree with your assessment regarding that this defense is not one of the clearly delineated cognizable defenses to a 9554 action.

10

> Regarding the award itself in this case and whether it was valid because the signature was electronic or in writing, I just want to note that this is a standard arbitration award agreement and that it's typical for them to be signed electronically. It appears that there's no dispute that they are in fact signed. I understand in his hearing request, Mr. Archinaco says that is in violation of FINRA rules because it's not in wet ink. Enforcement has reviewed the rules that it deems relevant, including FINRA rule 13904, which addresses arbitration award signatures, and nothing in that rule seems to support his position that signatures must be in wet ink as opposed to electronic.

*Id.* at 25:9-26:12

33.  In further response, Kalish's counsel advised:

> What I anticipate here is whoever makes this argument has a very serious problem on their hand, because this argument fails. This is not a ... this argument that these are signatures lacks integrity completely. If it didn't lack integrity, we would already have been provided the documents by FINRA. I've also demanded, so there's no waiver that by your deadline of Friday, that they give me such documents proving this electronic signature that they're now claiming. There's no DocuSign receipts or anything like that. I have, as I'll show you, multiple letters to FINRA requesting that specific information.
>
> I don't think we would be on this call right now if they had just complied with the rules and given me the documents, but there are no signatures. What you have are typed names from a case administrator. That's what you have. This is highly irregular. It is very upsetting to hear counsel from FINRA advocate in any way that this is acceptable. It's not. But if there's going to be an opinion written about this matter, FINRA's the proponent of what the argument is, and if they're successful in arguing that this is a signature and you adopt it, then we'll at least have an opinion saying that now there are no signature requirements in FINRA, and maybe that should be applied to everybody in the industry if that's the way this is going to be approached.

*Id.* at. pp. 28:14-30:17

-----

> . . . I'm sure they're going to present the evidence. I am sure, Hearing Officer McConathy, I looked at the rules. My recollection of reading these is they have a burden to sustain here that they're going to produce this evidence. I had to file the proceeding because they won't give me the evidence. They're going to give it to me now by Friday. You entered an order and I'm sure by Friday, they're going to give me the evidence of it being signed. I'm sure that they're going to show me something at this point. Here's emails. Here's something to show you that it's

11

authentic, because, yeah, the same question crosses my mind. I've had to trigger this procedure, for all of this, to get that information. Great. . . .

*Id.* at pp: 38:7-39:3.

-----

Who knows what procedure was followed? That's why I said, we're looking for a workaround. Well, they don't want to give us the signatures, which just doesn't make any sense, then let's get the gentlemen on the phone to affirm it for two seconds. Is this your award? We'll work around it. But even that doesn't comply with the rules. Not only that, the rules are really important in FINRA and the SEC, especially signatures.

*Id.* at pp. 41:8-20.

34. Thereafter, rather than agree to provide any evidence of signatures, FINRA's lead counsel advised instead:

I also feel compelled to point out that the award entered in this case is in the same format that other awards are entered with electronic signatures. It is typical. Electronic signatures are standard practice. They have been for years and we are aware of no challenge to the validity of the electronic signatures in this award.

*Id.* at p. 45:2-11.

35. In response, it was again pointed out by Kalish's counsel:

-----

. . . When I asked for emails from the arbitrators confirming that they authorized their signatures to be added, whether it's electronic confirmation or just emails, I don't ... even if it's just an email, that doesn't really comply, but even if it was just an email, they won't. There's no emails. There's nothing. Nothing to prove that these gentlemen signed this. There's the case administrator typed the name. That's what we believe right now. I will be proven wrong if they give me the evidence. But candidly, this is a pretty serious matter. Every time FINRA says anything, it gets more concerning because they don't have the evidence. There's no evidence. You would normally say, Ms. Hearing Officer, we have the following: electronic signatures are standard practice, they have been for years. When electronic signatures are done, they follow a standard procedure. When that procedure is followed, it generates the following things. We have provided those to Mr. Archinaco and he just refuses to listen. That's not this case.

12

> They don't have any of this, which leads to a bigger concern, which is, you could look at the federal rules of evidence, the absence of a record when it should ... ordinarily conducted activity, the absence of a record should be considered an adverse inference against the other party. I take Ms. Epstein at everything she says, that they use electronic signatures in other cases, not this one, because that's not what the rules provide, but you would think that they would follow standard electronic signature procedures. That's what I've asked for. Why can't we get that? Why can't we even get an affidavit or something from the panel?

*Id.* at pp. 46:17-48:19.

-----

> This is not proper. Something that came up in the underlying case was that Morgan Stanley's been using a procedure of not really having people verify signatures correctly and whatnot. The irony of this whole thing is the underlying case has to do with signatures.

*Id.* at p. 49:16-24.

36. Finally, after the Hearing Officer and FINRA jointly appeared to argue that the Hearing Officer lacked authority to reach the issue of the missing signatures, Kalish's counsel pointed out:

> It just gets into the issue of can Morgan Stanley as a proponent request a suspension when the award doesn't comply and when the opponent keeps writing letters, many of which you're carbon copied on, and you yourself don't say we would like the award to comply so we can pursue this gentleman. That, I think, you can decide, because otherwise you would leave Enforcement who ... by the way, FINRA explained they didn't affirmatively go to do this. It was triggered because Morgan requested that they have him pay. When they confirmed that request, essentially this thing went forward. Now we have a situation where a member firm has instituted proceedings to suspend with an award that we don't believe complies with the rules and therefore don't believe that it should be the basis for a suspension because of the deficiency. That, I think, you can reach.

*Id.* at pp. 52:11-53:10.

37. Ultimately, rather than agree to produce anything, FINRA's then lead counsel advised that the Hearing Officer could not reach the dispute:

> MS. EPSTEIN: I was only going to point out that if in fact the challenge is to the validity of the award, it can be viewed as a collateral attack on the arbitration award. Under

13

settled precedent *Sequeira* 2019 SEC LEXIS 286, that is not something that can be entertained here.

*Id.* at p. 56:2-10.

38. Following the status conference, rather than provide Kalish's counsel with any evidence of signatures, wet or digital by the July 15 deadline, instead FINRA advised Kalish's counsel that its then lead counsel was withdrawing her appearance and going on leave.

39. On July 18, 2022, Kalish's counsel requested documents from FINRA to provide any proof of signatures, wet or digital. *See* Kalish Request for Production, a true and correct copy of which is attached hereto as Exhibit 13.

40. In response, FINRA objected and refused to produce any evidence of the signatures. *See* FINRA Objections, a true and correct copy of which is attached hereto as Exhibit 14.

41. In response to the above, the Hearing Officer *sua sponte* moved the original hearing date scheduled for August 5 in this matter, to a date beyond the time period for Kalish to file for vacatur (August 10). Kalish's counsel objected, as by doing so, it mooted FINRA reaching the issue of the signatures, as filing this vacatur motion automatically stays the suspension proceedings.

42. Thus, FINRA has acted not only to evade production of any evidence of signatures, but has acted to evade any ruling as to the signatures by FINRA's Hearing Officer.

43. Further, FINRA has taken the position that the Hearing Officer lacks the authority to interpret the award document and that she is not permitted to "determine whether the arbitrators' names on the award are signatures. To do so, the Hearing Officer would have to delve into Dispute Resolution Services' processes for preparing the award, including the operation of the

14

system by which arbitrators communicate their decisions to Dispute Resolution Services." The Hearing Officer adopted this position, and has refused to reach the issue of the signatures.

44. Kalish has exhausted any and/or all administrative procedures available to him through FINRA prior to the filing of this complaint seeking vacatur, and accordingly this issue is ripe for review.

45. Further, as set forth in more detail in Kalish's Supporting Brief, in addition to the issue of the missing signatures of the arbitrators on the Award, the Panel failed to hear critical evidence as Morgan Stanley successfully concealed the evidence until Day 8 of the 13-day hearing. Despite the discovery of the concealed evidence, the Panel failed to order the evidence to be produced despite demand.

46. Accordingly, the arbitration award must be vacated for the two reasons set forth above.

## CONCLUSION

47. For the reasons set forth herein, in the supporting materials and in Kalish's accompanying Brief in Support of Motion to Vacate, Kalish requests that the arbitration award be vacated.

Dated: August 9, 2022

Respectfully submitted,

THE ARCHINACO FIRM LLC

Dixon Hayes Witherell & Ward, LTD.

By: /s/ Jason A. Archinaco
Jason A. Archinaco
Michael A. O'Leary
Attorneys for Plaintiff, Todd C. Kalish

By: /s/ Taylor R. Ward
Randall C. Dixon
Taylor R. Ward
Attorneys for Plaintiff, Todd C. Kalish

15

## CERTIFICATE OF SERVICE

I hereby certify that, on August 9, 2022, a true and correct copy of the foregoing *Complaint in the Form of a Motion to Vacate Arbitration Award* was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties through their counsel of record identified on the electronic filing receipt. Parties may access this filing through the Court's system.

I further hereby certify that I have served a true and correct copy of the foregoing *Complaint in the Form of a Motion to Vacate Arbitration Award* to and upon the following, via email on this 9th day of August, 2022:

H. Nicholas Berberian, Esq.
Tina L. Winer, Esq.
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street, Ste 1700
Chicago, IL 60602
twiner@nge.com
(*Counsel for Defendant*)

THE ARCHINACO FIRM LLC

Date: August 9, 2022

By: /s/ Jason A. Archinaco
Jason A. Archinaco

*Counsel for Plaintiff*