IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TODD C. KALISH, | ) | CASE NO. 1:22-cv-01412 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| MORGAN STANLEY & CO., LLC | ) | **MEMORANDUM OPINION** |
| d/b/a MORGAN STANLEY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

On August 9, 2022, Plaintiff Todd. C. Kalish filed a complaint in the form of a motion to vacate an arbitration award entered in favor of Defendant Morgan Stanley & Co., LLC ("Morgan Stanley"). (Doc. No. 1). This motion to vacate is fully briefed. (*See* Doc. Nos. 12-17.) For the reasons set forth below, the Court DENIES Plaintiff's motion to vacate.

I. **FACTUAL BACKGROUND**

Plaintiff was employed at Morgan Stanley from May 2008 until October 2017. (Doc. No. 1-2 at 21, 28, ¶¶ 5, 62; Doc. No. 13 at 504.)[1] In 2012, Plaintiff agreed to loan $25,000 to his business associate, Josh Zingales. (Doc. No. 1-2 at 43, 10.) To effectuate the loan, Plaintiff applied for a Portfolio Loan Account ("PLA") from Morgan Stanley on behalf of himself and his spouse, Julie Kalish. (*Id.* ¶ 11.) This process required the signatures of both Plaintiff and his spouse. (*See id.*)

Plaintiff and Ms. Kalish divorced in January 2014. (*Id.* at 44, ¶ 15.) In May 2014, Ms. Kalish claimed that she learned of the loan for the first time when she received a letter seeking to

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

1

remove her from the PLA. (*Id.* at 44-45, ¶¶ 19-21.) At this time, Ms. Kalish suspected that her signature was forged. (*See id.* at 45, ¶¶ 20-22.) This suspicion triggered several investigations by Morgan Stanley's Compliance Department and the Financial Industry Regulatory Authority ("FINRA") in 2014, 2015 and 2016. (*Id.* at 45-47, ¶¶ 26-27, 30-31; Doc. No. 13 at 504.) In July 2017, Ms. Kalish filed a FINRA statement of claims. (Doc. No. 1-2 at 25, ¶ 45.) At the conclusion of this proceeding, Plaintiff was terminated by Morgan Stanley on October 4, 2017. (*Id.* at 28, ¶ 62; Doc. No. 13 at 504.)

In September 2019, Plaintiff brought a lawsuit against Morgan Stanley related to Morgan Stanley's alleged defamation and intentional interference with contract. (Doc. No. 1 at 3, ¶ 10.) As FINRA members, Plaintiff and Morgan Stanley were compelled to arbitrate pursuant to FINRA bylaws. (*Id.* ¶ 11.) Between January 17 and March 10, 2022, a FINRA administrator heard Plaintiff's case. (*Id.* ¶ 13.) On May 14, 2022, the FINRA administrator delivered the arbitration panel's award against Plaintiff and in favor of Morgan Stanley. (*Id.* at 4, ¶ 14; Doc. No. 1-3.)

On June 14, 2022, Morgan Stanley initiated FINRA's suspension proceedings against Plaintiff. (Doc. No. 1 at 7, ¶ 22.) On June 17, 2022, FINRA notified Plaintiff that his license would be suspended on July 8, 2022. (*Id.* ¶ 23.) On July 7, 2022, Plaintiff requested a hearing regarding the suspension proceedings. (*Id.* ¶ 24.) Ultimately, Plaintiff was stripped of his license. (*See id.* at 14-15, ¶ 43.)

II. **PROCEDURAL BACKGROUND**

Plaintiff moved for vacatur on two grounds. First, Plaintiff challenged whether the signatures on the award comply with FINRA, local, and federal procedural rules. (Doc. No. 1 at 3, 7, ¶¶ 9, 24; Doc. No. 4 at 450-53.) Second, Plaintiff argued the award should be vacated

2

because the arbitrators refused to hear crucial evidence. (Doc. No. 4 at 453-60.) Morgan Stanley filed both an answer and a brief in opposition to the motion to vacate on October 7, 2022. (Doc. Nos. 12, 13.) Plaintiff filed a reply on October 21, 2022. (Doc. No. 14.) On October 27, 2022, Morgan Stanley filed a motion for leave to file a sur-reply (Doc. No. 15), which the Court granted on August 1, 2023.

Plaintiff contends that because Morgan Stanley filed both an answer and an opposition to Plaintiff's motion to vacate (Doc. Nos. 12, 13), the Court should treat Morgan Stanley's brief as a "disguised Rule 12(b)(6) motion to dismiss." (Doc. No. 14 at 851.) In the alternative, Plaintiff asks the Court to consider Morgan Stanley's brief as a motion for summary judgment because it cites "evidence outside of the pleadings," including a declaration by FINRA case administrator, Khoi Dang-Vu. (*Id.*) The Court declines both requests. Plaintiff captioned his initial pleadings as "Complaint in the Form of Motion to Vacate Arbitration Award," and Morgan Stanley thereafter properly "responded to that pleading as though it were *both* a complaint . . . *and* a motion to vacate." *Edward Mellon Trust v. UBS Painewebber, Inc.*, No. 2:06-cv-0184, 2006 WL 3227826, at *1 n.1 (W.D. Pa. Nov. 6, 2006).

### III. <u>LAW AND ANALYSIS</u>

#### A. Subject Matter Jurisdiction and Venue

The Federal Arbitration Act ("FAA") alone does not create subject matter jurisdiction in federal court. *Prim Sec., Inc. v. NASD Dispute Resol.*, No. 1:06-cv-323, 2006 WL 2612897, at *3 (N.D. Ohio Sept. 8, 2006) (citing *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)); *see also Moses H. Cone Memorial Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) ("[The FAA] creates a body of federal substantive law establishing and regulating the

duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 18 U.S.C. § 1331 or otherwise.").

It is undisputed that diversity jurisdiction exists in this case. (*See* Doc. No. 1 at 2; Doc. No. 12 at 480.)[2] Venue is also undisputed and appropriate in this District under the FAA because this is the District in which the arbitration was held. *See id.*; 9 U.S.C. §§ 9, 12.

### B. Enforceability of Arbitration Agreements

The FAA establishes a "liberal policy favoring arbitration agreements . . . ." *Wealth2k, Inc. v. Key Inv. Servs. LLC*, No. 1:19-cv-1445, 2021 WL 1600748, at *2 (N.D. Ohio Apr. 23, 2021). As part of this policy, courts must "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). As such, the Court's review of an arbitrator's decision is "one of the narrowest standards of judicial review in all of American Jurisprudence." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (internal quotations omitted). In the Sixth Circuit, "[a]s long as 'a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.' It is only when 'no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.'" *Physicians Ins. Cap. v. Praesidium Alliance Grp.*, 562 F.App'x 421, 423 (6th Cir. 2014) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).

---

[2] Because Plaintiff is a citizen of Ohio and Morgan Stanley is a Delaware limited liability company with a principal place of business in New York, there is complete diversity of citizenship. Plaintiff's suit against Morgan Stanley claimed damages between $31 million and $65 million, which exceeds the amount in controversy requirement. (Doc. No. 1-3 at 71.) Morgan Stanley did not contest Plaintiff's claims regarding diversity jurisdiction. (Doc. No. 12 at 480, ¶ 3.)

4

Section 10(a) of the FAA "identified four 'exclusive' grounds on which a federal court may vacate an arbitrator's decision." *Hale v. Morgan Stanley Smith Barney LLC*, No. 21-4184, 2023 WL 2972572, at *3 (6th Cir. Apr. 17, 2023). These grounds include:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Sixth Circuit has recognized an additional ground that allows a court to vacate an arbitration award if the award displays a "manifest disregard of the law." *HBK Sorce Fin. v. Ameriprise Fin. Servs.*, No. 4:10-cv-02284, 2012 WL 4505993, at *2 (N.D. Ohio Sept. 28, 2012) (citing *Jacada (Europe), Ltd. v. Int'l Mkt. Strategies, Inc.*, 401 F.3d 701, 713 (6th Cir. 2005)).

Plaintiff expressly challenges the arbitration award on grounds that the Panel allegedly exceeded its power by allowing electronic signatures in violation of 9 U.S.C. § 10(a)(4) and allegedly refused to hear material evidence in violation of 9 U.S.C. § 10(a)(3).

### C. Challenge to Signatures

First, Plaintiff alleges that the FINRA administrator exceeded his powers under Section 10(a)(4) by not requiring "wet" signatures on the award. (Doc. No. 4 at 450.) Plaintiff contends that because the arbitrators' names "appear[ed] typed in italics on the award," rather than in "wet or digital" signatures, the award is effectively unsigned. (Doc. No. 1 at 4, 7, 14; Doc. No. 4 at 450-51.) Plaintiff further argues that he "never agreed to dispense with the signature

5

requirements under FINRA Rules" and "e-signatures were not permitted under Ohio law (despite their general validity when proven)." (Doc. No. 4 at 450.)

In its opposition, Morgan Stanley claims there are four separate reasons Plaintiff's arguments regarding wet signatures fail: (1) FINRA interprets its rules to allow electronic signatures; (2) federal law and Ohio law both state that a signature may not be denied effect solely because it is electronic; (3) the provisions Plaintiff cites do not override FINRA's interpretation of its rules, federal law, or Ohio law; and (4) Plaintiff has no basis to challenge the legitimacy of the signature. (Doc. No. 13 at 498-99.) The Court will address each of these arguments in turn.

### 1. FINRA Rules

Plaintiff argues that FINRA Rule 13904(a) requires that all awards be "in writing and signed by the majority of arbitrators or as required by applicable laws." (Doc. No. 4 at 450.) Plaintiff highlights that "FINRA has never formally permitted e-signatures / digital signatures on award documents" and that it would need to petition the SEC to make such a change. (*Id.* at 451.)

Morgan Stanley responds that the signatures on the award satisfy FINRA Rule 13904 for three reasons: (a) the award was a "standard arbitration award agreement"; (b) it is typical for awards like these to be signed electronically; and (c) nothing in FINRA Rule 13904 supports Plaintiff's position that the award must have wet signatures. (Doc. No. 13 at 499.) Morgan Stanley argues that contrary to Plaintiff's assertions, FINRA amended its rules without petitioning the SEC by removing references to "manual signatures." (*Id.* at 500.) As a result, FINRA's rules now permit electronic signatures. (*Id.*) Moreover, Morgan Stanley highlights that FINRA arbitrations are "electronically administered on a portal with restricted access, which

6

allows the arbitrators themselves to electronically sign arbitration awards." (*Id.*) Morgan Stanley also emphasizes that Plaintiff has shown no evidence that this process was not followed for this award. (*Id.*)

The Court is persuaded that the signatures satisfy FINRA rules. The Parties do not dispute that the award was made pursuant to a standard arbitration award agreement. Plaintiff has not directed the Court to anything that renders this award atypical. Further, Plaintiff has not directed the Court to a FINRA rule that flatly prohibits enforcement of an arbitration award containing e-signatures instead "wet" signatures. The exhibits attached to Plaintiff's complaint show that FINRA considered the award to be valid and properly served on the parties. (Doc. No. 1-6 at 81 ("[A]n electronically signed copy of the award has already been served on the parties.").) Plaintiff has not supplied the Court with an adequate reason to override FINRA's own interpretation of its rules and signature requirements.

### 2. Federal Law

Plaintiff claims that under the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 *et seq.* ("E-SIGN Act"), courts have "relied upon audit trails and other similar documents when determining whether the e-signatures are valid." (Doc. No. 4 at 452.) Plaintiff claims that because FINRA "has been unable and/or refused to produce any of e-signatures or audit trails" the award's signatures are inadequate. (*Id.* at 453.)

Morgan Stanley counters that under the E-SIGN Act, an electronic signature has the same effect and is as legally binding as a handwritten signature. (Doc. No. 13 at 501 (citing *Durm v. iQuor Holdings US LLC*, No. 5:20-cv-0298, 2022 WL 219323, at *2 n.2 (N.D. Ohio Jan. 24, 2022)).) Likewise, Morgan Stanley emphasizes that the E-SIGN Act embraces a broad definition of electronic signature as "an electronic sound, symbol, or process, attached to or

7

logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record" that covers the signatures on the award. (*Id.* (citing 15 U.S.C. § 7006).) Morgan Stanley further argues that nothing in the E-SIGN Act "requires that an electronic signature must be affixed in a certain manner, or that an audit trail must be retained," as Plaintiff claims. (*Id.*) Instead, Morgan Stanley asserts that the E-SIGN Act merely "provides standards and compliance procedures for the circumstance '[i]f there is a security procedure between the parties.'" (*Id.* at 502 (citing Ohio Rev. Code §§ 1306.17-18).)

The purpose of the E-SIGN act is to "protect transactions from legal challenges that are solely based on the electronic form of the agreement." *Levy-Tatum v. Navient and Sallie Mae Bank*, No. 15-3794, 2016 WL 75231, at *5 n.4 (E.D. Pa. Jan. 7, 2016) (citing *Prudential Ins. Co. of America v. Prusky*, 413 F.Supp.2d 489, 494 (E.D. Pa. 2005)). To further that purpose, the Court will not vacate the award under the E-SIGN Act based on their electronic form. Plaintiff has not pointed to any other federal law that supports vacating this award.

### 3. Ohio Law

Plaintiff argues that Ohio Revenue Code ("O.R.C.") Section 2711.08 works in tandem with the FINRA rules to require that arbitration awards be signed by a majority of arbitrators. (Doc. No. 4 at 450.) Plaintiff further cites to Ohio's Unified Electronic Transaction Act ("UETA"), which acknowledges the validity of e-signatures *if* the transaction was "between parties each of which has agreed to conduct transactions by electronic means." (*Id.* (citing O.R.C. Chapter 1306).) Plaintiff claims that because he never agreed to conduct the arbitration by electronic means, the e-signatures are not sufficient under UETA. (*Id.*)

Morgan Stanley contests whether UETA applies to this motion, but maintains that even if it did, the signatures on the award would be recognized as enforceable. (Doc. No. 13 at 501.)

8

Specifically, Morgan Stanley cites case law and provisions of Ohio law that hold that a "record or signature may not be denied legal effect or enforceability because it is in electronic form" and "if a law requires a signature, an electronic signature satisfies the law." (*Id.* (citing O.R.C. § 1306.06(a) and (d)).)

The Court finds that the signatures are valid under Ohio law. *See Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F.Supp.3d 922, 932 (S.D. Ohio 2014) ("Electronic signatures are binding under Ohio law."). Though Plaintiff may not have explicitly agreed to the validity of electronic signatures, Plaintiff agreed to conduct the arbitration according to FINRA's rules, which as established above, allow for electronic signatures. Plaintiff has not cited any authority in Ohio law that requires the Court to vacate the award.

### 4. The Legitimacy of the Signatures

Morgan Stanley emphasizes that Plaintiff's sole basis for challenging the signatures is their electronic status, not their authenticity. (Doc. No. 13 at 503.) Morgan Stanley asserts that Plaintiff has not provided a "good faith basis to challenge the legitimacy of the three arbitrator's electronic signatures." (*Id.*) Instead, Morgan Stanley asserts that an electronic signature creates a "rebuttable presumption that it was validly executed." (*Id.* (citing authorities).)

Plaintiff rejoins that by challenging the signatures' compliance with the applicable rules, he is also calling to question the signature's authenticity. (*See* Doc. No. 14 at 846.) He suggests that Morgan Stanley's silence in response to his inquiries into the authentication of the signatures is an admission that no e-signatures occurred. (*Id.* at 846-47.) Plaintiff further implies that FINRA members like Morgan Stanley have increased access to FINRA employees and suggests this is "yet another strong piece of evidence that supports Plaintiff's belief that there is a significant issue" with the award's signatures. (*Id.* at 850.)

9

The Court concludes that the use of electronic signatures is not grounds for vacating the award. *See Guzman v. American Sec. Ins. Co.*, 377 F.Supp.3d 1362, 1366-67 (S.D. Fla. 2019) ("[Umpire's] electronic signature was sufficient to constitute [his] approval, and the Defendant does not cite to any law suggesting otherwise."); *Mawing v. PNGI Charles Town Gaming, LLC*, No. 3:14-cv-2, 2014 WL 1689772, at *3 (N.D. W. Va. Apr. 29, 2014) (rejecting challenge to signature on the basis that it was electronic); *Matter of Arbitration Between Vogel v. Citigroup Global Markets, Inc.*, No. 11-10092, 2011 WL 13254296, at *7 (D. Mass. Aug. 31, 2011) (holding that because petitioner did not allege that a missing signature "was the result of misconduct by the panel," "the circumstances surrounding the signature pages are not grounds for vacating the award"). Plaintiff's allegation that the e-signatures are not authentic with nothing but speculation as support does not provide a basis to vacate the arbitration award.

**D. Privileged Documents**

Because one of Plaintiff's arguments deals with the "decision to designate certain documents as privileged, it is important to summarize how those events transpired during arbitration." *Hale v. Stanley*, 571 F.Supp. 3d 872, 877 (S.D. Ohio 2021), *aff'd,* No. 21-4184, 2023 WL 2972572 (6th Cir. Apr. 17, 2023).

As part of the arbitration, Plaintiff propounded discovery requests, to which Morgan Stanley responded. (*See* Doc. No. 13 at 506-07.) Morgan Stanley asserted attorney-client and work product privileges regarding documents from the investigations into the alleged forgery of Plaintiff's wife's signature on the original PLA documents. (*Id.*; Doc. No. 4 at 453.) As Morgan Stanley's privilege log reflects, Morgan Stanley withheld documents from its internal investigations, arguing that "all three of the investigations . . . which led to [Plaintiff's] termination were done at the direction of counsel and included counsel." (Doc. No. 1-18 at 225;

10

*see also* Doc. No. 1-19 (privilege log identifying documents withheld for privilege).) Among the documents Morgan Stanley withheld for privilege were "numerous communications about" Plaintiff, including emails, voicemails, and chat logs. (Doc. No. 1-17 at 197, 198.)

Plaintiff filed a motion to compel before FINRA, arguing that the documents on Morgan Stanley's privilege log should be produced because Plaintiff's termination was "a business decision not covered by the attorney-client privilege." (Doc. No. 4 at 453.) Plaintiff further asserted that Morgan Stanley was using attorney-client privilege "as both a sword and a shield" "by relying upon the investigations and selectively releasing information, while simultaneously withholding all the documents related to the same investigations." (*Id.* at 453-54.) After both Plaintiff and Morgan Stanley submitted briefs and the panel held a conference, the panel granted in part and denied in part Plaintiff's motion to compel, ordering that Morgan Stanley produce certain interview notes. (*Id.* at 454; Doc. No. 13 at 507; *see* Doc. No. 1-17 (Plaintiff's Motion to Compel); *see also* Doc. No. 1-18 (Morgan Stanley's Response to Plaintiff's Motion to Compel); Doc. No. 1-21 (panel order reflecting a conference held on December 19, 2019).) During the arbitration hearing, two of Morgan Stanley's in-house attorneys, Marcie Mintz and Daniel Derechin, testified at length about their investigations and were cross-examined by Plaintiff's counsel. (Doc. No. 4 at 455.)

Plaintiff alleges that the award should be vacated under Section 10(a)(3) of the FAA because the arbitrators refused to hear crucial evidence contained in the documents Morgan Stanley withheld. (*Id.* at 453.) Specifically, Plaintiff alleges that allowing Ms. Mintz and Mr. Derechin "to testify at length about the investigations, despite their emails and other documents not being produced from those investigations" violated Section 10(a)(3). (*Id.* at 455.) As a result, Plaintiff claims his counsel was "hampered and left attempting to cross-examine the

11

witness using the privilege log itself, without the benefit of the actual documents or their contents." (*Id.*)

Morgan Stanley counters that the Panel correctly ruled regarding waiver of privilege in an order that Plaintiff chose not to contest, and that Morgan Stanley fully complied the Panel's order, in addition to producing over 66,000 pages of documents. (Doc. No. 13 at 505-06.) Morgan Stanley denies Plaintiff's claims that it was "selectively releasing information" in order to use privileged documents as both a shield and a sword. (*Id.* at 509.) Instead, Morgan Stanley argues that Morgan Stanley employees including Mr. Derechin, Steve Austin, Tom Russ, and Ms. Mintz testified regarding Plaintiff's termination during the arbitration. (*Id.* at 508-09.) Therefore, Morgan Stanley argues that the information it is purportedly using as a sword (the decision to terminate Plaintiff) and the information it is purportedly using as a shield (attorney communications and work product from the investigations) differ from one another and were properly withheld. (*Id.* at 509.) Lastly, Morgan Stanley contends that Plaintiff cannot show that he was prejudiced by not having access to these documents because he had "a full and fair opportunity to address the relevant issues with the most relevant witnesses." (*Id.* at 511.)

Plaintiff's motion to vacate asks the Court to find that the Panel's determinations regarding privilege deprived him of a fair hearing under Section (10)(a)(3). This request ignores the deferential standard of review in this case. *Hale*, 571 F.Supp.3d at 880. Section 10(a)(3) "permits the Court to vacate an arbitration aware if 'the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy or of other misbehavior by with the rights of any party have been prejudiced,'" setting a "high bar" for granting a motion to vacate an arbitration award. *Id.* at 879 (citing *Barrick Enters., Inc. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 620 (6th Cir. 2012)).

The Panel was "not bound to hear all evidence tendered by the parties." *Terk Techs. Corp. v. Dockery*, 86 F.Supp.2d 706, 709 (E.D. Mich. 2000) (citing *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990)).  Instead, the Panel "need only afford each party the opportunity to present their arguments and evidence." *Id.*  The record shows that the Panel did so.  Plaintiff was able to call his own witnesses, cross-examine Morgan Stanley's witnesses, and conduct discovery for other documents related to the investigation, affording him a fair hearing.  *See Hale*, 571 F.Supp.3d 872 (holding that despite not having access to investigative documents, the plaintiff "was still able to testify, call witnesses, and conduct discovery for other [] documents related to the investigation"); *see also Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 722 (D.C. Cir. 2008) (declining to vacate award under Section 10(a)(3) where other witnesses testified about allegedly privileged documents).

In order to find that the Panel violated Section (10)(a)(3), the Court must find that Plaintiff has "prove[n] by clear and convincing evidence that the arbitrator had no reasonable basis for his decision." *Floyd Co. Bd. of Educ. v. EUA Cogenex Corp.*, No. 98-6273, 1999 WL 1023704, at *2 (6th Cir. Nov. 5, 1999).  Plaintiff has provided no such evidence.  The Supreme Court, the Sixth Circuit, and the Ohio Supreme Court have each independently applied attorney-client privilege and work product protections to internal corporate investigations.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 302-03 (6th Cir. 2002); *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 937 N.E.2d 533, 537 (Ohio 2010).  Therefore, the Court finds that there is a legally plausible line of argument that supports the Panel's decision not to require Morgan Stanley to produce these documents.  *See Physician Ins. Cap.*, 562 F.App'x at 423.

Accordingly, the Court will not vacate the award under Section 10(a)(3).

## 5. CONCLUSION

For the reasons above, Plaintiff's motion to vacate arbitration award (Doc. No. 1) is DENIED.

**IT IS SO ORDERED.**

**Date:** November 20, 2023

                                          BRIDGET MEEHAN BRENNAN
                                          UNITED STATES DISTRICT JUDGE